**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| HDDA, LLC, successor in interest to ACCESS POINT FINANCIAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NUPEN PATEL and KRUPA PATEL,<br><br>    Defendants. | CIVIL ACTION FILE NO.:<br><br>_____ |

## COMPLAINT

Plaintiff HDDA, LLC, successor in interest to Access Point Financial, LLC, ("HDDA" or "Plaintiff") files this Complaint for damages against Defendants Nupen Patel and Krupa Patel (collectively, "Guarantors" or "Defendants"), respectfully showing this Court as follows:

### Parties, Jurisdiction, and Venue

1.    HDDA is a limited is a limited liability company organized and existing under the laws of the state of Delaware with its principal office in New York. HDDA's membership consists of WCP APF Sub Holdings, Inc., a corporation organized under the laws of the State of Delaware with its principal

place of business in New York, New York. For purposes of diversity jurisdiction, HDDA is a citizen of Delaware and New York.

2.      Nupen Patel is an individual citizen of the state of Texas and may be served with process at 4903 Shapiro Court, Missouri City, Texas 77459 or wherever he may be found. For purposes of diversity jurisdiction, Nupen Patel is a citizen of Texas.

3.      Krupa Patel is an individual citizen of the state of Texas and may be served with process at 4903 Shapiro Court, Missouri City, Texas 77459 or wherever she may be found. For purposes of diversity jurisdiction, Krupa Patel is a citizen of Texas.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

5.      Venue is appropriate in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2), LR 3.1 (B)(3), N.D. Ga., and the forum selection clauses contained in paragraph 14(g) of the Guaranties (defined below).

## Facts

6.      In March of 2019, Access Point Financial, LLC, f/k/a Access Point Financial, Inc. ("Access Point") made two loans to Minn Hotels, LLC (the "Borrower") totaling approximately $8.4 million, including an equipment loan and a mortgage loan (the "Loans").

### The Equipment Loan

7.      On or about March 5, 2019, the Borrower executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $2,000,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Equipment Note") for a loan in the same amount (the "Equipment Loan"). A true and correct copy of the Equipment Note is attached hereto as **Exhibit A** and incorporated by reference.

8.      On or about March 5, 2019 and to secure the Equipment Loan, the Borrower executed and delivered to Access Point at its Georgia address that certain Equipment Loan and Security Agreement (as may have been amended, modified, restated, and/or supplemented from time to time, the "Equipment Loan Agreement"). The Equipment Loan Agreement granted Access Point a first priority security interest in, among other things, any and all furnishings, fixtures and equipment purchased with the proceeds of the Equipment Loan, as more

specifically described in the Equipment Loan Agreement (collectively, the "Equipment"). A true and correct copy of the Equipment Loan Agreement is attached hereto as **Exhibit B** and incorporated by reference.

9.      On or about March 5, 2019 and to further secure the Equipment Loan, Guarantors executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "Equipment Guaranty") pursuant to which Guarantors irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Borrower to Access Point under the Equipment Note. A true and correct copy of the Equipment Guaranty is attached hereto as **Exhibit C** and incorporated by reference.

10.     On or about March 5, 2019 and to further secure the Equipment Loan, Nupen Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (the "Equipment Pledge Agreement") pursuant to which Nupen Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to Nupen Patel's legal and beneficial ownership of 100% of the outstanding membership interests of the Borrower. A true and correct copy of the Equipment Pledge Agreement is attached hereto as **Exhibit D** and incorporated by reference.

11.     The Equipment Note, the Equipment Loan Agreement, the Equipment Guaranty, the Equipment Pledge Agreement, and all other documents related to the Equipment Loan shall be referred to collectively herein as the "Equipment Loan Documents."

12.     Access Point subsequently assigned the Equipment Loan and related Equipment Loan Documents to APF – CPX I, LLC ("APF – CPX"), on a servicing retained basis.

13.     The Borrower failed to pay monthly payments under the Equipment Loan Documents as and when due.

14.     On or about March 11, 2020, Access Point sent a letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "First Equipment Delinquency Letter"). A true and correct copy of the First Equipment Delinquency Letter is attached hereto as **Exhibit E** and incorporated by reference.

15.     On April 1, 2020, Borrower, Guarantors, and Access Point, as loan servicer for APF – CPX, entered into that certain COVID-19 Forbearance Agreement (the "Equipment Forbearance Agreement", also an Equipment Loan Document) whereby Access Point agreed to forbear from collection of all monthly

payments of interest and principal due under the Equipment Loan commencing April 1, 2020 and expiring on June 30, 2020 (the "Forbearance Period"). A true and correct copy of the Equipment Forbearance Agreement is attached hereto as **Exhibit F** and incorporated by reference.

16.     In Section 4 of the Equipment Forbearance Agreement, Borrower and Guarantors acknowledged that the outstanding balance of the Equipment Note as of March 31, 2020, exclusive of attorneys' fees, was as follows:

| | |
|---|---:|
| Principal | $ 2,000,000.00 |
| Interest | $ 42,972.20 |
| Late Charges | $ 2,183.91 |
| Fees | $ 100.00 |
| Total | $ 2,045,256.11 |

17.     In Section 10 of the Equipment Forbearance Agreement, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Equipment Loan and ratified and reaffirmed all the provisions of the related Equipment Loan Documents, except as expressly amended by the Equipment Forbearance Agreement.

18.     Borrower failed to pay monthly payments under the Equipment Loan Documents as and when due after the end of the Forbearance Period.

19.     On or about April 17, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents

and demanding payment of all sums due and payable under the Equipment Loan (the "Second Equipment Delinquency Letter"). A true and correct copy of the Second Equipment Delinquency Letter is attached hereto as **Exhibit G** and incorporated by reference.

20.    On or about May 18, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "Third Equipment Delinquency Letter"). A true and correct copy of the Third Equipment Delinquency Letter is attached hereto as **Exhibit H** and incorporated by reference.

21.    On or about June 16, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "Fourth Equipment Delinquency Letter"). A true and correct copy of the Fourth Equipment Delinquency Letter is attached hereto as **Exhibit I** and incorporated by reference.

22.    On or about July 1, 2020, Borrower, Guarantors, and Access Point, as loan servicer for APF – CPX, entered into that certain First Amendment to Covid-19 Forbearance Agreement (the "Equipment Forbearance Amendment", also an

Equipment Loan Document) whereby Access Point agreed to forbear from collection of certain monthly payments due under the Equipment Loan commencing June 1, 2020 and expiring on September 30, 2020 (the "Extended Forbearance Period"). A true and correct copy of the Equipment Forbearance Amendment is attached hereto as **Exhibit J** and incorporated by reference.

23.    In Section 6 of the Equipment Forbearance Amendment, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Equipment Loan and ratified and reaffirmed all the provisions of the Equipment Loan Documents, except as expressly amended by the Equipment Forbearance Amendment.

24.    Borrower failed to pay monthly payments under the Equipment Loan Documents as and when due after the end of the Extended Forbearance Period.

25.    On or about July 16, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "Fifth Equipment Delinquency Letter"). A true and correct copy of the Fifth Equipment Delinquency Letter is attached hereto as **Exhibit K** and incorporated by reference.

26.    On or about August 13, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "Sixth Equipment Delinquency Letter"). A true and correct copy of the Sixth Equipment Delinquency Letter is attached hereto as **Exhibit L** and incorporated by reference.

27.    On or about November 11, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Equipment Loan Documents and demanding payment of all sums due and payable under the Equipment Loan (the "Seventh Equipment Delinquency Letter"). A true and correct copy of the Seventh Equipment Delinquency Letter is attached hereto as **Exhibit M** and incorporated by reference.

28.    To date neither Borrower nor Guarantors have cured their defaults under the Equipment Loan Documents.

*The Mortgage Loan*

29.    On or about March 5, 2019, the Borrower executed and delivered to Access Point at its Georgia address that certain Promissory Note, in the original amount of $6,400,000.00 (as may have been amended, modified, restated, and/or supplemented from time to time, the "Mortgage Note" and together with the

Equipment Note, the "<u>Notes</u>") for a loan in the same amount (the "<u>Mortgage Loan</u>"). A true and correct copy of the Mortgage Note is attached hereto as **Exhibit N** and incorporated by reference.

30.     On or about March 5, 2019 and to secure the Mortgage Loan, the Borrower executed and delivered to Access Point at its Georgia address that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing (as may have been amended, modified, restated, and/or supplemented from time to time, the "<u>Mortgage Loan Agreement</u>"). The Mortgage Loan Agreement granted Access Point a first priority security interest in, among other things, the "<u>Property</u>", as defined in the Mortgage Loan Agreement. The Mortgage Loan Agreement was recorded on March 6, 2019 in the Office of the Registrar of Titles, Henepin County, Minnesota at Document No. T05598627. A true and correct copy of the recorded Mortgage Loan Agreement is attached hereto as **Exhibit O** and incorporated by reference.

31.     On or about March 5, 2019 and to further secure the Mortgage Loan and the Equipment Loan, Nupen Patel executed and delivered to Access Point at its Georgia address that certain Pledge Agreement (the "<u>Mortgage Pledge Agreement</u>") pursuant to which Nupen Patel unconditionally granted and assigned to Access Point a continuing first priority security interest and security title to

Nupen Patel's legal and beneficial ownership of 100% of the outstanding membership interests of the Borrower. A true and correct copy of the Mortgage Pledge Agreement is attached hereto as **Exhibit P** and incorporated by reference.

32.     On or about March 2, 2019 and to further secure the Mortgage Loan, Guarantors executed and delivered to Access Point at its Georgia address that certain Guaranty Agreement (the "Mortgage Guaranty" and together with the Equipment Guaranty, the "Guaranties") pursuant to which Guarantors irrevocably, absolutely, and unconditionally guaranteed to Access Point the prompt payment when due, of all amounts owed by Borrower to Access Point under the Mortgage Note. A true and correct copy of the Mortgage Guaranty is attached hereto as **Exhibit Q** and incorporated by reference.

33.     The Mortgage Note, the Mortgage Loan Agreement, the Mortgage Pledge Agreement, the Mortgage Guaranty, and all other documents related to the Mortgage Loan shall be referred to collectively herein as the "Mortgage Loan Documents."

34.     The Equipment Loan Documents and the Mortgage Loan Documents shall be referred to collectively herein as the "Loan Documents."

35.     Access Point subsequently assigned the Mortgage Loan and related Mortgage Loan Documents to APF – CRE I, LLC ("APF – CRE"), on a servicing retained basis.

36.     The Borrower failed to pay monthly payments under the Mortgage Loan Documents as and when due.

37.     On or about March 11, 2020, Access Point sent a letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "First Mortgage Delinquency Letter"). A true and correct copy of the First Mortgage Delinquency Letter is attached hereto as **Exhibit R** and incorporated by reference.

38.     On April 1, 2020, Borrower, Guarantors, and Access Point, as loan servicer for APF – CRE, entered into that certain COVID-19 Forbearance Agreement (the "Mortgage Forbearance Agreement", also a Mortgage Loan Document) whereby Access Point agreed to forbear from collection of all monthly payments of interest and principal due under the Mortgage Loan during the Forbearance Period. A true and correct copy of the Mortgage Forbearance Agreement is attached hereto as **Exhibit S** and incorporated by reference.

39.     In Section 4 of the Mortgage Forbearance Agreement, Borrower and Guarantors acknowledged that the outstanding balance of the Mortgage Note as of March 31, 2020, exclusive of attorneys' fees, was as follows:

| | | |
|---|---|---|
| Principal | $ | 6,400,000.00 |
| Interest | $ | 153,688.87 |
| Late Charges | $ | 8,664.99 |
| Fees | $ | 100.00 |
| Total | $ | 6,562,453.86 |

40.     In Section 10 of the Mortgage Forbearance Agreement, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Mortgage Loan and ratified and reaffirmed all the provisions of the related Mortgage Loan Documents, except as expressly amended by the Mortgage Forbearance Agreement.

41.     Borrower failed to pay monthly payments under the Mortgage Loan Documents as and when due after the end of the Forbearance Period.

42.     Accordingly, on or about April 17, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "Second Mortgage Delinquency Letter"). A true and correct copy of the Second Mortgage Delinquency Letter is attached hereto as **Exhibit T** and incorporated by reference.

43.    On or about June 16, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "Third Mortgage Delinquency Letter"). A true and correct copy of the Third Mortgage Delinquency Letter is attached hereto as **Exhibit U** and incorporated by reference.

44.    On or about July 1, 2020, Borrower, Guarantors, and Access Point, as loan servicer for APF – CRE, entered into that certain First Amendment to Covid-19 Forbearance Agreement (the "Mortgage Forbearance Amendment", also a Mortgage Loan Document) whereby Access Point agreed to forbear from collection of certain monthly payments due under the Mortgage Loan during the Extended Forbearance Period. A true and correct copy of the Mortgage Forbearance Amendment is attached hereto as **Exhibit V** and incorporated by reference.

45.    In Section 6 of the Mortgage Forbearance Amendment, Borrower and Guarantors ratified and reaffirmed their respective obligations under the Mortgage Loan and ratified and reaffirmed all the provisions of the Mortgage Loan Documents, except as expressly amended by the Mortgage Forbearance Amendment.

46.     Borrower failed to pay monthly payments under the Mortgage Loan Documents as and when due after the end of the Extended Forbearance Period.

47.     Accordingly, on or about July 16, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "Fourth Mortgage Delinquency Letter"). A true and correct copy of the Fourth Mortgage Delinquency Letter is attached hereto as **Exhibit W** and incorporated by reference.

48.     On or about August 13, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "Fifth Mortgage Delinquency Letter"). A true and correct copy of the Fifth Mortgage Delinquency Letter is attached hereto as **Exhibit X** and incorporated by reference.

49.     On or about November 11, 2020, Access Point sent another letter to Borrower notifying it of its defaults pursuant to the Mortgage Loan Documents and demanding payment of all sums due and payable under the Mortgage Loan (the "Sixth Mortgage Delinquency Letter"). A true and correct copy of the Sixth

Mortgage Delinquency Letter is attached hereto as **Exhibit Y** and incorporated by reference.

50.     To date neither Borrower nor Guarantors have cured their defaults under the Mortgage Loan Documents.

*The Default Letters*

51.     On or about November 24, 2020, Access Point, through counsel, sent a letter to Borrower and Guarantors notifying them of their defaults pursuant to the Loan Documents and demanding payment in full of all obligations due and owing under the Loan Documents (the "First Default Letter"). A true and correct copy of the First Default Letter is attached hereto as **Exhibit Z** and incorporated by reference.

52.     In the First Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Loan Documents would be enforced, such that unless all amounts due and owing were paid by Borrower or Guarantors within ten (10) days from the receipt of the First Default Letter, Borrower and Guarantors would be liable for reasonable attorneys' fees and costs.

53.     In the First Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on

the exact terms of the Loan Documents notwithstanding any alleged prior departure.

54.     Borrower and Guarantors failed to make payment within the requisite ten (10) days of the First Default Letter.

55.     On or about December 22, 2021, Access Point, through counsel, sent another letter to Borrower and Guarantors notifying them of their defaults pursuant to the Loan Documents and demanding payment in full of all obligations due and owing under the Loan Documents (the "Second Default Letter"). A true and correct copy of the First Default Letter is attached hereto as **Exhibit AA** and incorporated by reference.

56.     In the Second Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-1-11, the attorneys' fees provisions under the Loan Documents would be enforced, such that unless all amounts due and owing were paid by Borrower or Guarantors within ten (10) days from the receipt of the Second Default Letter, Borrower and Guarantors would be liable for reasonable attorneys' fees and costs.

57.     In the Second Default Letter, Access Point also notified Borrower and Guarantors that, pursuant to O.C.G.A. § 13-4-4, Access Point intended to rely on

the exact terms of the Loan Documents notwithstanding any alleged prior departure.

58.     Borrower and Guarantors failed to make payment within the requisite ten (10) days of the Second Default Letter.

59.     APF – CPX subsequently assigned the Equipment Loan and related Equipment Loan Documents back to Access Point.

60.     APF – CRE subsequently assigned the Mortgage Loan and related Mortgage Loan Documents back to Access Point.

61.     Access Point subsequently assigned the Loans and related Loan Documents to HDDA.

62.     As of December 15, 2021, principal, accrued but unpaid interest, and other charges outstanding under the Loan Documents were as follows:

**Equipment Loan:**

| | |
|---|---:|
| Principal | $  1,952,324.27 |
| Interest (08/01/2021 – 12/31/2021) | $       71,365.33 |
| Default Interest (10/01/2020 – 12/15/2021) | $     231,962.55 |
| Deferred Interest (03/01/2020 – 12/15/2021) | $     128,739.43 |
| UCC Release Fee | $            400.00 |
| Modification Fee | $         1,250.00 |
| NSF Fee | $            100.00 |
| Late Fee | $       25,137.55 |
| Payoff Quote Fee | $            250.00 |
| Exit Fee @ 1.5% | $       30,000.00 |
| TOTAL | $  2,441,529.13 |
| | |
| Per Diem Interest: | $            976.16 |

**Mortgage Loan:**

| | | |
|---|---|---|
| Principal | $ | 6,367,849.82 |
| Interest (06/01/2021 – 12/31/202) | $ | 359,722.23 |
| Default Interest (10/01/2020 – 12/15/2021) | $ | 391,120.77 |
| Deferred Interest (03/01/2020 – 12/15/2021) | $ | 136,564.83 |
| UCC Release Fee | $ | 600.00 |
| Modification Fee | $ | 1,250.00 |
| NSF Fee | $ | 100.00 |
| Release of Intercreditor Agreement | $ | 200.00 |
| Release Prep Fees | $ | 400.00 |
| Recording Fees | $ | 300.00 |
| Late Fee | $ | 56,164.40 |
| Payoff Quote Fee | $ | 250.00 |
| Exit Fee @ 1.5% | $ | 96,000.00 |
| Less Insurance Escrow | $ | (24,955.09) |
| TOTAL | $ | 7,385,526.96 |
| | | |
| Per Diem Interest: | $ | 2,476.39 |

63.    The aforementioned outstanding principal, accrued but unpaid interest, and other charges outstanding under the Loan Documents are exclusive of costs of collection and attorneys' fees available under the Loan Documents and applicable law.

64.    Additional interest, fees, costs, and charges have continued to accrue and continue to accrue under the Loan Documents from December 15, 2021, going forward.

## COUNT I – BREACH OF CONTRACT – EQUIPMENT GUARANTY

65.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

66.     The Equipment Guaranty is a valid and enforceable contract between Defendants and HDDA, as successor in interest to Access Point.

67.     Access Point, APF – CPX, and HDDA fully performed their obligations under the Equipment Guaranty.

68.     Under the Equipment Guaranty, Defendants "irrevocably, absolutely and unconditionally guarantee[d] to [HDDA] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Equipment] Note and secured by the [Equipment Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Equipment] Note, late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [Equipment] Loan Documents."

69.     Defendants breached the Equipment Guaranty by failing to pay to HDDA all amounts due by the Borrower under the Equipment Note upon demand for same.

70.     HDDA was damaged as a result of the breach of contract described above.

71.     HDDA is entitled to recover from Defendants all amounts due, owing, and accruing under the Equipment Loan Documents and applicable law, including but not limited to, the amount due and payable under the Equipment Note as of December 15, 2021 in the total amount of $2,441,529.13, consisting of $1,952,324.27 in principal, $432,067.31 in accrued interest, and $57,137.55 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $976.16 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT II – BREACH OF CONTRACT – MORTGAGE GUARANTY

72.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

73.     The Mortgage Guaranty is a valid and enforceable contract between Defendants and HDDA, as successor in interest to Access Point.

74.     Access Point, APF – CRE, and HDDA fully performed their obligations under the Mortgage Guaranty.

75.     Under the Mortgage Guaranty, Defendants "irrevocably, absolutely and unconditionally guarantee[d] to [HDDA] the prompt payment when due,

whether at stated maturity, by acceleration or otherwise, of . . . the principal sum evidenced by the [Mortgage] Note and secured by the [Mortgage Loan Agreement], or so much thereof as may be outstanding from time to time, together with interest thereon at the rates of interest specified in the [Mortgage] Note, late fees, prepayment consideration, and all other sums which may or shall become due and payable pursuant to the provisions of the [Mortgage] Loan Documents."

76.    Defendants breached the Mortgage Guaranty by failing to pay to HDDA all amounts due by the Borrower under the Mortgage Note upon demand for same.

77.    HDDA was damaged as a result of the breach of contract described above.

78.    HDDA is entitled to recover from Defendants all amounts due, owing, and accruing under the Mortgage Loan Documents and applicable law, including but not limited to, the amount due and payable under the Mortgage Note as of December 15, 2021 in the total amount of $7,385,566.96, consisting of $6,367,849.82 in principal, $887,407.83 in accrued interest, and $155,264.40 in fees less $24,955.09 in insurance escrow, with additional interest accruing at the combined (contract and default interest rate) amount of $2,476.39 per day, plus

such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT III – UNJUST ENRICHMENT

79.     The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

80.     HDDA, as successor in interest to Access Point, provided Defendants a valuable service by advancing money to Borrower under the Loan Documents.

81.     Defendants requested and knowingly accepted the benefits accruing under the Loan Documents.

82.     Defendants' receipt of the aforementioned benefits would be unjust without compensating HDDA.

83.     Defendants have been unjustly enriched in the amount of the outstanding unpaid principal and interest under the Loan Documents, plus expenses, costs, and attorneys' fees.

84.     Defendants, in fairness and good conscience, should remit to HDDA the extent of the value conferred, which includes all amounts due, owing, and accruing under the Loan Documents, and applicable law, including but not limited to, (a) the amount due and payable under the Equipment Note as of December 15, 2021 in the total amount of $2,441,529.13, consisting of $1,952,324.27 in

principal, $432,067.31 in accrued interest, and $57,137.55 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $976.16 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue and (b) the amount due and payable under the Mortgage Note as of December 15, 2021 in the total amount of $7,385,566.96, consisting of $6,367,849.82 in principal, $887,407.83 in accrued interest, and $155,264.40 in fees less $24,955.09 in insurance escrow, with additional interest accruing at the combined (contract and default interest rate) amount of $2,476.39 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue.

## COUNT IV – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-1-11

85.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

86.    Pursuant to the Loan Documents, Defendants are required to pay HDDA all costs, including reasonable attorneys' fees and expenses, incurred by HDDA in enforcing performance or collecting any payments due under the Loan Documents.

87.    Moreover, Access Point, as predecessor in interest to HDDA, made demand upon Defendants for its attorneys' fees and costs pursuant to O.C.G.A. § 13-1-11, on November 24, 2020 and again on December 22, 2021.

88.    As of the date of this Complaint, Defendants have failed to pay HDDA the amounts outstanding under the Notes and Guaranties.

89.    As Defendants failed to make the requisite payment within ten (10) days of the First Default Letter and Second Default Letter, HDDA is entitled to judgment in its favor for statutory attorneys' fees calculated by reference to O.C.G.A. § 13-1-11.

## COUNT V – ATTORNEYS' FEES & COSTS UNDER O.C.G.A. § 13-6-11

90.    The foregoing paragraphs of this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

91.    As shown by the above, Defendants have acted in bad faith, have been stubbornly litigious, and have caused HDDA undue trouble and expense.

92.    Accordingly, HDDA is entitled to recover its expenses of litigation, including reasonable attorneys' fees, under O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant judgment in its favor and against Defendants, as follows:

(i)   As to <u>Count I</u>:  Judgment against Defendants for breach of the Equipment Guaranty in the total amount of $2,441,529.13 as of December 15, 2021 (comprised of $1,952,324.27 in principal, $432,067.31 in accrued interest, and $57,137.55 in fees), with additional interest accruing at the combined (contract and default interest rate) amount of $976.16 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(ii)   As to <u>Count II</u>:  Judgment against Defendants for breach of the Mortgage Guaranty in the total amount of $7,385,566.96 as of December 15, 2021 (comprised of $6,367,849.82 in principal, $887,407.83 in accrued interest, and $155,264.40 in fees less $24,955.09 in insurance escrow), with additional interest accruing at the combined (contract and default interest rate) amount of $2,476.39 per day, plus expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(iii)   As to <u>Count III</u>: Reimbursement by Defendants to Plaintiff for unjust enrichment, to the extent of the value conferred, which includes all amounts due, owing, and accruing under the Loan Documents, and applicable law, including but not limited to

(a) the amount due and payable under the Equipment Note as of December 15, 2021 in the total amount of $2,441,529.13, consisting of $1,952,324.27 in principal, $432,067.31 in accrued interest, and $57,137.55 in fees, with additional interest accruing at the combined (contract and default interest rate) amount of $976.16 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue; and

(b) the amount due and payable under the Mortgage Note as of December 15, 2021 in the total amount of $7,385,566.96, consisting of $6,367,849.82 in principal, $887,407.83 in accrued interest, and $155,264.40 in fees less $24,955.09 in insurance escrow, with additional interest accruing at the combined (contract and default interest rate) amount of $2,476.39 per day, plus such further expenses, costs, and attorneys' fees as the same have accrued and continue to accrue;

(iv)   As to <u>Count IV</u>: An award of Plaintiff's attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan Documents to the fullest extent permitted under O.C.G.A. § 13-1-11 and Georgia law;

(v)   As to <u>Count V</u>: An award of Plaintiff's attorneys' fees, costs, and expenses in connection with enforcing its rights under the Loan Documents to the fullest extent permitted under O.C.G.A. § 13-6-11 and Georgia law; and

(vi)   For such other and further relief as this Court deems just, proper, and equitable.

Submitted this 7th day of January 2022.

**THOMPSON HINE LLP**

*/s/ Alexandra C. Nelson*
Alexandra C. Nelson
Georgia Bar No. 241352
Austin B. Alexander
Georgia Bar No. 926059
Two Alliance Center, Suite 1600
3560 Lenox Road
Atlanta, Georgia 30326
Telephone:  404-541-2900
Facsimile:  404-541-2905
*alexandra.nelson@thompsonhine.com*
*austin.alexander@thompsonhine.com*

*Attorneys for Plaintiff HDDA, LLC*